1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES DONAGHE and ALVARO ORTIZ, | Case No.: 24-cv-0359-MMA (DDL) |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | [Doc. No. 6] |
| SHERMAN HEIGHTS ELEMENTARY, SAN DIEGO UNIFIED SCHOOL DISTRICT, and NICOLE ENRIQUEZ, | |
| Defendants. | |

James Donaghe and Alvaro Ortiz ("Plaintiffs") have filed this civil action alleging Defendants Sherman Heights Elementary, San Diego Unified School District, and Nicole Enriquez ("Defendants") violated Plaintiffs' rights under Title IX of the Civil Rights Act of 1964 ("Title IX"), the First Amendment, and the Bane Act, and are liable for creating a nuisance under federal common law and California law, negligence, and negligent infliction of emotional distress.  *See* Doc. No. 1.  On April 2, 2024, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Doc. Nos. 6, 6-1.  Plaintiffs filed an Opposition, Doc. No. 9, to which Defendants filed a Reply, Doc. No. 10.  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local

Rule 7.1.d.1.  *See* Doc. No. 11.  For the reasons discussed below, the Court **GRANTS** the Motion to Dismiss.

## I. BACKGROUND[1]

Plaintiffs live across the street from Sherman Elementary school.[2]  Doc. No. 1 at 7.  When they became concerned about what they allege to be unsafe traffic conditions around the school, Donaghe began filming school traffic, which included the comings and goings of elementary school children.  *Id.* at 7, 9.  Sherman Elementary parents saw Donaghe filming the traffic and approached the principal, Nicole Enriquez, about their concerns that an unknown person was filming their children.  *Id.* at 9; Doc. No. 1-2 at 2.  Enriquez sent an email to Donaghe telling him that although she knew he was "within [his] rights to record on [his] phone during our morning ingress and afternoon egress," parents had expressed their concern to her about the filming, with one parent noting that Donaghe had been seen standing in his front window dressed in a robe while filming.  Doc. No. 1-2 at 2.  Enriquez suggested that Donaghe use a "Ring" camera instead of his iPhone to record the traffic in order to alleviate parents' concerns.  *Id.*  Enriquez then thanked Donaghe for his "efforts to ensure that our neighborhood is safe and that we have the city infrastructure that we deserve."  *Id.*  She also told him she was "[l]ooking forward to a cooperative and amicable relationship."  *Id.*

Donaghe continued to film the traffic around Sherman Elementary and parents continued to be concerned.  *Id.* at 10–11.  In March of 2022, a parent at Sherman Elementary, Josclyn Davis, confronted Donaghe as he was filming.  *Id.* at 15.  According

---

[1] Because this matter is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations set forth in the Complaint.  *See Barker v. Riverside Cnty. Office of Edu.*, 584 F.3d 821, 824 (9th Cir. 2009).

[2] Plaintiffs name "Sherman Heights Elementary" as a Defendant, but as the Court notes in Section III of this Order, the correct name of the school in question is "Sherman Elementary."  *See* https://www.sherman.sandiegounified.org (last visited August 19, 2024.)

24-cv-0359-MMA (DDL)

to Plaintiffs, Davis threatened Donaghe and "offensively gestured at [him], mocking his sexuality, making a limp-wristed gesture that is a common epithet" designed to mock Donaghe's sexual orientation. *Id.* at 16. Plaintiffs allege Davis continued to "stalk[], taunt[], and threaten[] Donaghe in a sustained anti-LGBTQI+ hate campaign," including driving by Donaghe's house and filming his home. *Id.* at 17. In April of 2022, Donaghe approached Davis in her car to serve her with a "cease and desist" letter and Davis sprayed mace in Donaghe's face. *Id.* Donaghe then obtained a temporary restraining order ("TRO") against Davis. *Id.* at 18.

Plaintiffs allege that there is a pervasive anti-LQBTQI+ culture at San Diego United School District ("SDUSD") and Sherman Elementary. *Id.* at 11. In May of 2022, Plaintiffs allege that SDUSD employees "began disseminating malicious and false allegations that Plaintiffs were recording children and had conducted themselves in a sexually explicit manner toward children." *Id.* at 10. Parents began posting their concerns on the Sherman Elementary Facebook page, including allegations that Donaghe had been filming children. *Id.* One post from April of 2023 noted that parents were "afraid and concerned," questioned why Donaghe was filming children and parents picking up their children from school, and asked "What can we do to ensure he is not an issue," stating "He appears disgruntled." Doc. No. 1-3 at 2. In another instance, an unknown individual yelled "faggot" at Donaghe while he was standing on his porch and asked him why he was filming kids. Doc. No. 1 at 18.

In May of 2023, Defendants served a fourteen-day stay away order on Donaghe, preventing him from filming on and around the school. *Id.* at 19. In June of 2023, Defendants convened a meeting for parents to address Donaghe's filming and parents' concerns. *Id.* at 20. Plaintiffs complain they were not invited to the event and that Defendants "did not share an accurate depiction of Donaghe with these parents and instead further inflamed anti-LGBTQI+ discriminatory animus against Plaintiffs." *Id.* According to Plaintiffs, the television station Telemundo produced a story on the matter,

during which Plaintiffs allege Defendants further inflamed anti-LGBTQI+ sentiments against Donaghe.  *Id.*

Plaintiffs allege Defendants' actions have resulted in "physical injury, sickness and pain, mental anguish and emotional suffering and distress."  *Id.* at 41.  They ask for general, compensatory, special, and punitive damages, an injunction requiring Defendants to remove false statements about Plaintiffs from social media affiliated with SDUSD and Sherman Elementary, estop the behavior described in the Complaint, and "implement a program to improve safety conditions at and around "[Sherman Heights Elementary]."  *Id.* at 41–42.  They also ask for a "a consent decree ordering lasting remediation of anti-LGBTQI+ discrimination and conduct at Sherman Heights Elementary and in and around SDUSD schools and SDUSD adjacent neighborhoods," attorneys' fees, and costs.  *Id.* at 42.

## II. LEGAL STANDARD

A Rule 12(b)(6)[3] motion to dismiss tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions need not be taken as true merely because they are cast in the form of

---

[3] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998). In determining the propriety of a Rule 12(b)(6) dismissal, generally, a court may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998).

## III. DISCUSSION

Defendants seek dismissal of this action in the first instance because Plaintiffs have failed to plead they have complied with California's Government Claims Act. Doc. No. 6-1 at 9–10. Defendants also argue Plaintiffs do not have standing to bring a Title IX claim, they seek dismissal of Plaintiffs' § 1983 claim on Eleventh Amendment Immunity grounds, and argue that there is no cause of action for federal common law nuisance. *Id.* at 10–13. As to Plaintiffs' state law claims, Defendants contend they fail as a matter of law because Plaintiffs have not established the requisite elements of those claims. *Id.* at 13–17. Finally, Defendants argue Plaintiffs have violated Rule 8 because the Complaint does not set forth "a short and plain statement of the claim[s] showing that the pleader is entitled to relief" but is rather a mass of general allegations. *Id.* at 17–20.

### A. Sherman Heights Elementary School is Not a Proper Defendant

Defendants seek dismissal of Sherman Heights Elementary as a Defendant because there is no school within the SDUSD with that name and because a school is not an "independent 'government entity' that can be sued." Doc. No. 1 at 8–9. Plaintiffs argue that dismissal is unwarranted for a simple clerical error. Doc. No. 9 at 11–13. They also contend that because Sherman Heights Elementary is a "hybrid-funded charter school" which receives federal funding, it is an independent entity subject to suit. *Id.*

Defendants are correct that there is no school in the San Diego Unified School District named "Sherman Heights Elementary." *See* https://www.sandiegounified.org/

schools/elementary (last visited August 19, 2024).[4]  Further, Federal Rule of Civil Procedure 17(b) states, in pertinent part, that the capacity to be sued in federal court is governed by "the law of the state where the court is located."  Fed. R. Civ. P. 17(b). Although California "construe[s] the definition of a public entity broadly," "a named defendant is not a proper party if the defendant is simply 'part of' a public entity, and where any claim against defendant would need to be alleged against that public entity." *Brown v. County of Solano*, No. 2:21-cv-01045-KJM-AC, 2022 WL 493080, at *2 (E.D. Cal. Feb. 17, 2022) (citing *M.B. by and through Bilokonsky v. United States*, No. 19-cv-1054-CAB-AHG, 2019 WL 6329068, at *2 (S.D. Cal. Nov. 26, 2019)).  Public schools in California are not proper parties to a lawsuit because they are not a public entity as defined by California Government Code sections 811.2 and 900.4 but rather a "part of" the school districts within which they operate.  *M.B. by and through Bilokonsky*, 2019 WL 6329068, at *2.  Although Plaintiffs contend that Sherman Elementary is a "hybrid-funded charter school" and is therefore subject to suit independently from SDUSD, the SDUSD website does not list it as one of the charter schools within the district, and it does not operate independently from SDUSD.  *See* https://www.sandiegounified.org/ schools/charterschools (last visited August 19, 2024); *see also Mario V. v. Alisal Union School Dist.*, No. 18-cv-00041-BLJ, 2018 WL 3707286, at *4 (N.D. Cal. Aug. 3, 2018) (dismissing elementary school as an improper defendant not subject so suit because it

---

[4] Defendants ask the Court to take judicial notice of the SDUSD website.  "It is appropriate to take judicial notice of [information displayed on school districts' public websites], as it was made publicly available by government entities (the school districts), and neither party disputes the authenticity of web sites or the accuracy of the information displayed therein."  *See Daniels-Hall v. Nat'l Educ. Ass'n.*, 629 F.3d 992, 998–99 (9th Cir. 2010); *see also* Fed. R. Evid. 201.  Plaintiffs also cite to various SDUSD websites. *See* Doc. No. 1, passim.  The Court finds the SDUSD website appropriate for judicial notice, and therefore **GRANTS** Defendants' request.

24-cv-0359-MMA (DDL)

was not a "distinct entity").  Accordingly, the Court **GRANTS** the Motion to Dismiss Sherman Heights Elementary as a Defendant in this action **WITH PREJUDICE**.

**B.     Count One: Title IX**

Plaintiffs allege Defendants have violated their rights under Title IX of the 1964 Civil Rights Act by creating a "culture" of harassment and abuse of Plaintiffs based on their status as LGBTQI+ individuals.  Doc. No. 1 at 24.  Plaintiffs claim they suffered verbal and physical abuse because of their sexual orientation, and that Defendants "spread false accusations that Plaintiffs were pedophiles and filming for inappropriate reasons" on social media accounts associated with SDUSD and Sherman Heights Elementary.  *Id.* at 24–28.  Further, Plaintiffs claim Defendants "assisted and abetted" Davis's actions by allowing her to park on school-designated property, condoning her behavior, and failing to take any action to prevent Davis from assaulting Donaghe.  *Id.* at 24–28.

Title IX is designed to protect equal access to education.  *Davis v. Monroe County Bd. Of Educ.*, 526 U.S. 629, 651 (1999).  It provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Senator Birch Bayh, who proposed the legislation that would become Title IX, stated on the Senate floor that it was intended to cover "discrimination in admission to an institution, discrimination of available services or studies within an institution once students are admitted, and discrimination in employment within an institution, as a member of a faculty . . ."  *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 526 (1982).  Thus, the Supreme Court has indicated that participation in, or an intent to participate in, an educational institution's programs, is a necessary precursor to stating a Title IX claim.  *See Doe v. Brown University*, 896 F.3d 127, 131–32 (1st Cir. 2018) (citing *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512 (1982)).  Plaintiffs did not participate in or intend to participate in Sherman Elementary's educational programs and they therefore have not stated a Title IX claim.  *Id.*; *see also*

*Herrera v. Valley Christian Academy*, 616 F. Supp. 3d 1040, 1050–51 (C.D. Cal. 2022) (non-students must show they availed themselves of services provided by educational institutions or intended to do so in order to bring a Title IX claim).

Although as Plaintiffs point out Title IX can apply to non-students, courts have done so only in the context of a plaintiff who participated in or intended to participate in "an educational program or activity receiving Federal assistance." *Brown Univ.*, 896 F.3d at 131. The caselaw cited by Plaintiffs is not to the contrary. Plaintiffs cite *Lopez v. Regents of University of Cal.*, 5 F. Supp. 3d 1106 (N.D. Cal. 2013) as support for their assertion that Title IX applies to non-students such as Plaintiffs. In *Lopez*, the parents of a University of California, Berkeley ("UCB") student brought a Title IX claim, alleging UCB had denied their daughter the benefit of school programs by failing to address harassment and abuse which occurred on and off campus by her boyfriend, who was a graduate student and teacher at UCB. *Id*. at 1110–12. The court said that "in general, non-students such as parents do not have a personal claim under Title IX." *Id.* at 1114. But "parents do have standing to assert Title IX claims on behalf of a student" whose equal access to education has been violated. *Id.* Plaintiffs here seek to assert a personal Title IX claim and therefore must show they participated or intended to participate in "an educational program or activity receiving Federal assistance." *Id*.; *Brown Univ.*, 896 F.3d at 131; *Herrera*, 616 F. Supp. 3d at 1050–51. The other case cited by Plaintiffs, *Mahanoy Area School District v. B.L.*, 594 U.S. 180 (2021), is not a Title IX case at all, but rather involved a First Amendment challenge. A public school high school student brought a First Amendment claim against her school after she was suspended for posting "vulgar language and gestures criticizing both the school and the school's cheerleading team" on social media. *Id.* at 183. The Supreme Court concluded that the school had violated plaintiff's First Amendment rights even though the conduct occurred off campus. *Id.* at 187–88.

In sum, because Plaintiffs did not participate in or attempt to participate in SDUSD's or Sherman Elementary's educational programs or activities, they are not

within the "zone of interest" Title IX was designed to protect.  *See Herrera*, 616 F. Supp. 3d at 1053 (a non-student plaintiff must allege he or she sought to "avail themselves of services provided by educational institutions" to be within Title IX's zone of interest) (citing *Doe*, 896 F.3d at 132–33).  Further, with respect to Enriquez, "Title IX reaches institutions and programs that receive federal funds, . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."  *T.L. v. Orange Unified School Dist.*, No. 8:23-01078-FWS-KES, 2024 WL 305387, at *8 (C.D. Cal. Jan. 9, 2024) (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009)); *see also Al-Rifai v. Willows Unified Sch. Dist.*, 469 F. App'x 647, 649 (9th Cir. 2012) ("Title IX does not create a private right of action against school officials, teachers, and other individuals who are not direct recipients of federal funding.") (citation omitted).

Accordingly, Plaintiffs have failed to state a Title IX claim for which relief can be granted because they do not have standing to bring such a claim.  The Court therefore **GRANTS** the Motion to Dismiss **WITH PREJUDICE** as to Count One.

**C.    Count Two: First Amendment Retaliation, 42 U.S.C. § 1983**

In Count Two, Plaintiffs allege Enriquez "aided and abetted violence and hate crimes towards Plaintiffs as part of efforts to silence Donaghe's lawful first amendment activities . . . ," and SDUSD "maintained, condoned, and/or permitted policy, custom, and practice of conscious disregard of and reckless indifference to First Amendment rights which was a moving force in the violation of Plaintiff's rights . . . ."  Doc. No. 1 at 29.  Specifically, Plaintiffs claim Davis "acted under the supervision of . . . Enriquez when she wrongfully assaulted Donaghe."  *Id.*

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights."  *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citation

24-cv-0359-MMA (DDL)

omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

"Persons" under § 1983 are state and local officials sued in their individual capacities, private individuals and entities which act under color of state law, and/or the local governmental entity itself. *See Vance v. Cnty of Santa Clara*, 928 F. Supp. 993, 995–96 (N.D. Cal. 1996). As noted above, school districts in California are instrumentalities of the state, and the Supreme Court has held that "a state is not a person within the meaning of § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 63–64 (1989). Accordingly, SDUSD is not a "person" within the meaning of § 1983 and cannot be subject to suit under that provision. *See Alvarado v. Los Angeles Unified School Dist.*, No. 2:22-cv-01591-SSS (AFM), 2023 WL 2761549, at *3 (C.D. Cal. Feb. 27, 2023) (Los Angeles Unified School District is an "arm of the state" which is not a "person" subject to liability under § 1983); *S.C. v. County of Los Angeles*, No. CV 21-6163-MWF (PDx), 2023 WL 10407121, at * 25 (C.D. Cal. Jan. 5, 2023) ("School districts have been deemed arms of the State, and therefore, are not 'persons' under § 1983, while municipalities (such as cities and counties) are not arms of the State and are deemed 'persons' for purposes of § 1983.") (citing *Will*, 491 U.S. at 70)); *Roe v. San Jose Unified School Dist.*, No. 20-cv-02798-LHK, 2021 WL 292035, at *12 (N.D. Cal. Jan. 28, 2021) ("An entity that is an 'arm-of-the-state' is 'not a "person" for purposes of 42 U.S.C. § 1983 . . . [and therefore] California school districts such as the District are not 'persons' subject to suit under § 1983.") (quoting *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1122 (9th Cir. 2007)); *Schroder v. San Diego Unified School Dist.*, No. 07-cv-1266-IEG (RBB), 2009 WL 1357414, at * 6 (S.D. Cal. May 13, 2009) (holding SDUSD and the San Diego Unified School Board were arms of the state under the Eleventh Amendment and therefore immune).

24-cv-0359-MMA (DDL)

Further, district courts in California have determined that California school districts and individuals acting in their official capacity as school district employees are immune from suit under the Eleventh Amendment for § 1983 claims seeking damages or other retrospective relief because they are instrumentalities of the state.  *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 928–29 (9th Cir. 2017); *Arizona Students' Assoc. v. Arizona Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex parte Young*, 209 U.S. 123, 149–50 (1908)); *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 348, 254 (9th Cir. 1992); *Orange Unified Sch. Dist.*, 2024 WL 305387, at *9.[5]  Accordingly, to the extent Plaintiffs seek damages against Enriquez in her official capacity, those claims are also barred by the Eleventh Amendment.

In addition to damages, however, Plaintiffs ask this Court for "a permanent injunction to remove false statements regarding Plaintiffs from . . . SDUSD affiliated social media, to estop Defendants from the wrongful conduct herein, and implement a program to improve safety conditions at and around [Sherman Elementary]," as well as "a consent decree ordering lasting remediation of anti-LGBTQI+ discrimination and conduct at Sherman . . . Elementary and in and around SDUSD schools and SDUSD adjacent neighborhoods."  Doc. No. 1 at 8, 41–42.  The Eleventh Amendment "does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law," nor does Eleventh Amendment immunity apply to state officials sued for damages in their individual capacity.  *Arizona Students' Assoc.*, 824 F.3d at 865; *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Shosone-Bannock Tribes v. Fish & Game Com'n, Idaho*, 42 F.3d 1278, 1283 (9th Cir. 1994).

---

[5] Although the Ninth Circuit adopted a new test for determining whether an entity was an arm of the state in *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023), the Court noted that "we have no reason to believe that our decision today will substantially destabilize past decisions granting sovereign immunity to state entities within the Ninth Circuit."  *Id*. at 1031–32.

24-cv-0359-MMA (DDL)

"To obtain injunctive relief for a First Amendment retaliation claim, Plaintiffs must plausibly allege: "(1) he or she engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Arizona Students' Assoc.*, 824 F.3d at 865 (citing *O'Brien v. Welty*, 818 F.3d 920, 922–34 (9th Cir. 2016)).

Donaghe's act of filming a public area is a constitutionally protected First Amendment activity, as Enriquez acknowledged in her May 14, 2022 email to Donaghe. *See* Doc. No. 1 at 2; *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (First Amendment right to film matters of public interest); *Brown v. Roseville City School Dist.*, No. 2:2023-cv-0256 DJC CKD (PS), 2024 WL 1931951, at * 3 (E.D. Cal. May 2, 2024) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."). As to the second and third elements of a retaliation claim, however, Plaintiffs fall short. To state a § 1983 claim, Plaintiffs must plausibly allege how, through her "own individual actions," Enriquez violated their constitutional rights. *See Iqbal*, 556 U.S. at 676–77; *Arizona Students' Assoc.*, 824 F.3d at 865. The allegations "must be individualized and focus on [her] duties and responsibilities," *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)), and they must show she "[performed] an affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act which [s]he [was] legally required to do that cause[d] the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiffs do not allege with sufficient specificity what Enriquez personally did to "chill" Donaghe from continuing to film or that "there was a nexus between the [Donaghe's] actions and an intent to chill speech." *Arizona Students' Assoc.*, 824 F.3d at 865. Plaintiffs allege Enriquez "made and encouraged allegations that interpreted

Plaintiff's constitutionally protected activity of filming school traffic conditions as arising from a deviant and predatory intertest in filming students," knew others were making false claims about Plaintiffs' activities and motives, "foster[ed]" an anti-LGBTQI+ atmosphere, and "perpetuat[ed]" anti-LGBTQI+ rumors and hate-mongering. *Id.* at 10, 12, 16, 28–29. These allegations do not satisfy Rule 8 because they are too vague and conclusory to plausibly allege Enriquez retaliated against Plaintiffs for Donaghe's filming. Plaintiffs do not explain with sufficient specificity what allegations Enriquez made which "interpreted" Donaghe's filming as deviant, when she made the allegations, to whom she made the allegations, what legal duties she failed to perform after gaining knowledge of other individuals' allegedly anti-LGBTQI+ activities, when or what she did to "foster" or "perpetuate" anti-LGBTQI+ rumors, or how the acts of "encouraging," "fostering," or "perpetuating" anti-LGBTQI+ rumors chilled their First Amendment rights. *Arizona Students' Assoc.*, 824 F.3d at 865.

Plaintiffs also allege Enriquez did not do anything to stop Davis's actions toward Plaintiffs and allowed Davis to park in a school parking lot close to their home even though Plaintiffs had obtained a restraining order against Davis which required her to remain 300 yards away from them. Doc. No. 1 at 18. But Plaintiffs have not pled any facts to establish that Enriquez had a legal duty to prevent Davis from assaulting Donaghe, enforce the restraining order obtained by Plaintiffs, or even that she knew about the restraining order. *Leer*, 844 F.2d at 633; *Johnson*, 588 F.2d at 743. Further, Plaintiffs allege Enriquez failed to report a verbal attack on Donaghe by an unknown individual, but they do not say why she was required to do so or to whom she was required to make the report. Doc. No. 1 at 18. Finally, Plaintiffs allege Davis "acted under the supervision of . . . Enriquez when she wrongly assaulted Donaghe," but they provide no facts to support that assertion. Doc. No. 1 at 29.

The sole specific allegation Plaintiffs make is that Enriquez served Donaghe with a fourteen-day stay away order on May 1, 2023 which Donaghe alleges "prevent[ed] [him] from lawfully recording unsafe conditions on and around the school and making use of

the public park next to his home." Doc. No. 1 at 19.  California Penal Code § 626.4 which authorizes stay away orders for California schools states, in pertinent part, as follows:

> (a) The chief administrative officer of . . . a school . . . may notify a person that consent to remain on the campus or other facility under the control of the chief administrative officer has been withdrawn whenever there is reasonable cause to believe that such person has willfully disrupted the orderly operation of such campus or facility.
>
> . . . .
>
> (c) [¶] In no case shall consent be withdrawn for longer than 14 days from the date upon which consent was initially withdrawn.  The person from whom consent has been withdrawn may submit a written request for a hearing on the withdrawal within the two-week period . . . .  The chief administrative officer shall grant such a hearing not later than seven days from the date of receipt of the request and shall immediately mail a written notice of the time, place, and date of such hearing to such person.

Cal. Penal Code §626.4.

Donaghe alleges the stay-away order "served to prevent [him] from lawfully recording unsafe conditions on and around the school and making use of the public park next to his home."  Doc. No. 1 at 19.  The "public park" referred to by Donaghe appears to be the joint use park next to Sherman Elementary.  Doc. No. 9 at 13.

Schools and school properties are non-public forums.  *Frudden v. Pilling*, 877 F.3d 821, 833 (9th Cir. 2017) (citing *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988)).  "Speech in a non-public forum can be restricted, but the restrictions must be (1) 'reasonable' and (2) not an effort to suppress expression merely because public officials oppose the speaker's views.'"  *Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cnty. School Dist. No. 9*, 880 F.3d 1097, 1105 (9th Cir. 2018) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).  To be reasonable, a restriction must "reasonably fulfill[] a legitimate need."  *Id.*  Preventing disturbances on and around a school campus is a legitimate need.  *Healy v. James*, 408 U.S. 169, 184

(1972) ("[A] [school] has a legitimate interest in preventing disruption on the campus."). Given parental concerns about Donaghe's filming and the resulting animosity, preventing Donaghe from filming from the joint use park next to Sherman Elementary for fourteen days is both a reasonable and content neutral restriction. Thus, Plaintiffs have not plausibly alleged there was a nexus between the stay-away order and an intent to chill speech. *Arizona Students' Assoc.*, 824 F.3d at 865; *Iqbal*, 556 U.S. at 676–77.

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss Count Two **WITH PREJUDICE** as to Defendant SDUSD. The Court **GRANTS** the Motion to Dismiss Count Two **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** as to Enriquez.

**D.    Count Four: Federal Common Law Nuisance**

In Count Four, Plaintiffs bring a federal common law nuisance claim alleging Defendants "have suffered a special injury different in kind from the general public as LGBTQI+ individuals living in the immediate proximity of Sherman Heights Elementary," and the "widespread and extremely dangerous anti-LGBTQI+ conduct by public schools . . . [constitutes] a nuisance under the *federal* common law." Doc. No. 1 at 31 (emphasis in original). Defendants contend that a claim for federal common law nuisance does not exist. Doc. No. 6-1 at 12–13.

The Supreme Court has noted that while there is no "federal general common law," there is "the need and authority in some limited areas to formulate what has come to be known as 'federal common law.'" *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) and *United States v. Standard Oil Co.*, 332 U.S. 301, 308 (1947)). "These instances are 'few and restricted,' . . . and fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which Congress has given the courts the power to develop substantive law.'" *Id.* (internal citations omitted). Thus, while a cause of action for federal common law nuisance has developed, such claims have been brought almost entirely in environmental and tribal contexts

24-cv-0359-MMA (DDL)

involving such things as national or interstate pollution, water rights, and sewage.  *See*, *e.g.*, *Native Village of Kivalina v. Exxon Mobil Corp*, 696 F.3d 849, 856 (9th Cir. 2012) (addressing the applicability of federal common law nuisance to greenhouse gas emissions); *American Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 424 (2011) (addressing federal common law with regard to carbon dioxide emissions); *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 317–18 (1981) (discussing federal common law in the context of interstate water pollution); *Middlesex Cnty. Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 21–22 (1981) (discussing federal common law in the context of the discharge of sewage across state lines).  The Court has located no cases, and Plaintiffs have not cited any cases, which apply federal common law nuisance to the facts described by Plaintiffs in their Complaint.  Without any such authority, the Court cannot conclude that federal common law nuisance encompasses the "widespread and extremely dangerous anti-LGBTQI+ conduct by public schools when in receipt of federal funds . . ." described by Plaintiffs.  *See* Doc. No. 1 at 31.  "Much of modern life is distasteful, but the federal common law of nuisance bestows upon [federal courts] no power to root out that which happens to offend both us and a vigorous plaintiff."  *California Taho Regional Planning Agency v. Jennings*, 594 F.2d 181, 194 (9th Cir. 1979)

In any event, even if a federal common law nuisance cause of action exists for the type of conduct alleged in the Complaint, Plaintiffs have not plausibly alleged such a claim against Defendants.  As with Plaintiffs' First Amendment retaliation claim, the Eleventh Amendment bars Plaintiffs' claims against SDUSD and Enriquez in her official capacity with respect to any claims for damages because they are "arms of the state."  *See Pauma Band of Luiseno Mission Indians v. California*, 813 F.3d 1155, 1169 (9th Cir. 2015) ("[O]nly prospective, non-monetary relief against state officials is exempt from the Eleventh Amendment bar.")  This is so even though Plaintiffs allege a common law cause

24-cv-0359-MMA (DDL)

of action.  *See Oneida Cnty., N.Y. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 251 (1985).[6]

In addition, Plaintiffs have failed to plausibly allege how Defendants are responsible for the nuisance.  *See Iqbal*, 556 U.S. at 677–78.  "Under federal common law, a public nuisance is defined as an 'unreasonable interference with a right common to the general public,'" and "[a] successful public nuisance claim generally requires proof that a defendant's activity unreasonably interfered with the use or enjoyment of a public right and thereby caused the public-at-large substantial and widespread harm."  *Native Village of Kivalina*, 696 F.3d at 855.  Plaintiffs make broad claims about the "culture of anti-LGBTQI+ discrimination" which "pervades SDUSD schools, Sherman Heights Elementary . . . and . . . the neighborhood surrounding Sherman Heights Elementary," and claim generally that "Defendants" have "created" and "cultivated" this culture, and "condoned, participated in, aided, abetted, and/or failed to intervene to prevent" anti-LGBTQI+ behavior.  Doc. No. 1 at 31 –35.  Like Plaintiffs' First Amendment retaliation allegations, these allegations are too vague and conclusory to "allow[] the court to draw the reasonable inference that [Defendants are] responsible for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  "[A] complaint which "lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)" because  "a plaintiff's allegations must 'provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them,' including what conduct is at issue."  *Adobe Systems Inc. v. Blue Source Group, Inc.*, 125

---

[6] Defendants also contend that they cannot be sued under common law because the existence of a statutory duty is a necessary prerequisite to state a cause of action against a California public entity.  *See* Doc. No. 6-1 at 12; *Searcy v. Hemet Unified School Dist.*, 177 Cal. App. 3d 792, 802 (1986).  At least one federal court has concluded, however, that "as a matter of federal common law,  . . . any state officer who allegedly violates federal law may be sued for injunctive relief in federal court" regardless of applicable state law defining liability of a public entity or official."  *Tohono O'odham Nation v. Ducey*, 174 F. Supp. 3d 1194, 1200 (D. Ariz. March 30, 2016).

F. Supp. 3d 945, 964 (N.D. Cal. Aug. 31, 2015) (citations omitted); *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

Moreover, to the extent the Complaint contains a particular reference to Enriquez, Plaintiffs still do not explain what specifically she did to "unreasonably interfere with the use or enjoyment of a public right." *Native Village of Kivalina*, 696 F.3d at 855.  They allege Enriquez "encouraged" an anti-LGBTQI+ culture at Sherman Elementary, "spurred on" anti-LGBTQI+ parents, and "viewed" a post by Davis on social media in which Davis threatened to pepper spray Donaghe.  Doc. No. 1 at 31–33.  These, too, are vague and conclusory allegations that do not plausibly allege any specific conduct by Enriquez or any link between Enriquez's conduct and the alleged nuisance.  The only specific allegation Plaintiffs make is that Enriquez "abetted" Davis's assault on Donaghe by providing her "preferred parking on school grounds" which enabled her to film into Plaintiffs' home and create "inflammatory" social media posts.[7]  This does not plausibly allege Enriquez created a federal common law nuisance by "unreasonably interfer[ing] with the use or enjoyment of a public right and thereby caus[ing] the public-at-large substantial and widespread harm." *Native Village of Kivalina*, 696 F.3d at 855.  Plaintiffs do not allege Enriquez knew Davis was filming into their home, and the bare assertion that Enriquez allowed Davis to park on school property does not lead the Court to "draw the reasonable inference that [Enriquez] is responsible for" Davis's assault on Donaghe. *Iqbal*, 556 U.S. at 678.

Accordingly the Court **GRANTS** the Motion to Dismiss Count Four **WITH PREJUDICE** as to Defendants SDUSD.  The Court **GRANTS** the Motion to Dismiss

---

[7] On page 18 of the Complaint, Plaintiffs allege the parking incident occurred *after* Davis's assault on Donaghe, but on page 34 of the Complaint, Plaintiffs appear to say the parking incident occurred *before* Davis's assault.  *See* Doc. No. 1 at 18, 34.

24-cv-0359-MMA (DDL)

Count Four **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** as to Enriquez.

**E.      Counts Three, Five, and Seven: State Law Claims**

Given that no federal claim remains against any Defendant, the Court therefore addresses whether it should continue to exercise supplemental jurisdiction over the remaining state law claims. Because the "jurisdictional questions ordinarily must precede merits determinations in dispositional order," *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), the Court considers first the issue of supplemental jurisdiction over the state law claims before reaching their merits.

The Court's authority to entertain state law claims is governed by 28 U.S.C. § 1367. Pursuant to § 1367, a district court may decline to exercise supplemental jurisdiction over a state claim, if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

A "district court can decline jurisdiction under any one of [the] four provisions" of § 1367(c). *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998). When a district court declines supplemental jurisdiction over a state law claim pursuant to one of the first three provisions of the statute, the court need not state its reasons for dismissal. *Id.*

Section 1367(c) "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise[.]" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "[I]n the usual case in

which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 fn.7 (1988), *superseded on other grounds by statute as recognized in Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (citing *Fent v. Okla. Water Res. Bd*, 235 F.3d 553, 557 (10th Cir. 2000)).  "The general rule is 'when federal claims are dismissed before trial, . . . pendent state law claims also should be dismissed.'" *Kohler v. Midway Land, LLC*, No. 12cv0148 JM (WMc), 2013 WL 10733705, at *5 (S.D. Cal. Apr. 5, 2013) (quoting *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367–68 (9th Cir. 1992)); *see also Sanford*, 625 F.3d at 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)).

Here, considering the nature of Plaintiff's state law claims and that no federal claims remain in this case against any Defendant, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants at this time and **DISMISSES** them **WITHOUT PREJUDICE**.  *See* 28 U.S.C. § 1367(c)(1), (3); *see also Locantore v. Hunt*, 775 F. Supp. 2d 680, 689 (S.D.N.Y. Mar. 31, 2011) ("Plaintiff's federal claims are all dismissed prior to trial, and there is no reason to believe that judicial economy, convenience, or fairness would be served by this [c]ourt exercising supplemental jurisdiction over [p]laintiff's state law claims, and to do so would be inconsistent with the principle of comity."); *Cohill*, 484 U.S. at 351–57 (concluding that elimination of all federal claims gives the court "a powerful reason to choose not to continue to exercise jurisdiction").

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss as to Defendant Sherman Heights Elementary **WITH PREJUDICE** because any amendment would be futile.  *See Gray v. JPMorgan Chase Bank, N.A.*, 661 F. Supp. 3d 991, 999 (C.D. Cal. March 13, 2023) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.

24-cv-0359-MMA (DDL)

1995)).

As to Count One the Court **GRANTS** the Motion to Dismiss Count **WITH PREJUDICE** because any amendment as to that claim would be futile. *Bonin*, 59 F.3d at 845.

As to Count Two, the Court **GRANTS** the Motion to Dismiss **WITH PREJUDICE** as to Defendant SDUSD because amendment would be futile. *Bonin*, 59 F.3d at 845. The Court **GRANTS** the Motion to Dismiss Count Two **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** as to Defendant Enriquez.

As to Count Four, the Court **GRANTS** the Motion to Dismiss **WITH PREJUDICE** as to Defendant SDUSD because amendment would be futile. *Bonin*, 59 F.3d at 845. The Court **GRANTS** the Motion to Dismiss Count Four **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** as to Enriquez.

With respect to Plaintiffs' state law claims, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants and **DISMISSES** them **WITHOUT PREJUDICE**. 28 U.S.C. § 1367(c); *Carnegie-Mellon Univ.*, 484 U.S. at 350 fn.7.

Any amended complaint will be the operative pleading and shall be filed no later than **Monday, September 23, 2024.** Defendant must respond within the time prescribed by Federal Rule of Civil Procedure 15.[8] Any claim not re-alleged and any Defendant not named in the amended complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty*., 693 F.3d 896, 928

---

[8] In addition, the Court notes that any amended pleading must be accompanied by a version of that pleading that shows—through redlining or similar method—how that pleading differs from the previously dismissed pleading. *See* CivLR 15.1.c.

(9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated: August 20, 2024

HON. MICHAEL M. ANELLO
United States District Judge

24-cv-0359-MMA (DDL)